J-S24032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CAROL HURLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FELICIA HURLEY AND JOHN HURLEY | : | |
| | : | |
| | : | No. 342 WDA 2024 |
| APPEAL OF: FELICIA HURLEY | : | |

Appeal from the Order Entered February 21, 2024
In the Court of Common Pleas of Fayette County Domestic Relations at
No(s):  No. 1727 of 2023, G.D.

BEFORE:   BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:             **FILED: October 15, 2024**

Felicia Hurley ("Mother") appeals from the February 21, 2024 order awarding Carol Hurley ("Paternal Grandmother") sole legal and sole physical custody of Mother's three biological daughters, M.H., born in June 2009, B.H., born in June 2011, and A.H., born in June 2015 (collectively, "the Children").

_____

[*] Former Justice specially assigned to the Superior Court.

The order awarded Mother and John Hurley ("Father") partial physical custody at the discretion of Paternal Grandmother.[1, 2] We affirm.

At the time of the inception of this matter, Mother and Father were separated after a tumultuous marriage. **See** Notes of Testimony ("N.T."), 10/16-17/23, at 142, 148, 219. There was no controlling custody order, and as best we can discern, Father was largely uninvolved in the Children's lives.[3] **See id.** at 162, 187. It is undisputed that the Children, who were born of the marriage, resided with Mother and her paramour, Andrew Lloyd, in Markleysburg, Pennsylvania. Mother however allowed Paternal Grandmother, who resided in Bainbridge, Indiana, to take the Children for approximately two weeks every summer. **See id.** at 78, 207.

As the court aptly stated in its opinion accompanying the subject order:

---

[1] Although the court identified its award of custodial time to Mother and Father as "visitation," we observe that the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, does not provide for an award of "visitation." **See** 23 Pa.C.S.A. § 5323(a). Rather, the Act provides for "partial physical custody," defined as "[t]he right to assume physical custody of the child for less than a majority of the time," and "supervised physical custody," defined as, "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. §§ 5322(a), 5323(a). Hence, as the court's award does not reference supervision, we therefore deem the award of custodial time to Mother and Father to be more properly partial physical custody.

[2] Father did not file a separate appeal and has not participated in the instant appeal.

[3] Paternal Grandmother testified that Father was incarcerated in Washington County at the time of the subject proceeding. **See** N.T. at 187.

> [Paternal] Grandmother had previously been awarded custody through Dependency Court Order of Greene County, Pennsylvania in 2018 and into 2019. Mother had been charged with truancy violations for the [C]hildren and . . . other issues were discovered. This procedure was conducted through Greene County Children and Youth Services and the Court of Common Pleas of Greene County. The home of Mother was found to be in deplorable condition with no electricity or water and animal feces were throughout the home. [Paternal] Grandmother had custody of the [C]hildren for eight months until [June of] 2019 when they were returned to Mother [following her move to Fayette County].

Opinion and Order, 2/21/24, at 2; *see also* N.T. at 28-29.

Paternal Grandmother then initiated the instant matter on August 31, 2023, *via* a complaint for custody seeking sole legal and primary physical custody of the Children. Paternal Grandmother asserted standing to seek custody of the Children pursuant to 23 Pa.C.S.A. § 5324(3) as follows: her relationship with the Children began with the consent of Father and/or order by court; she was willing assume responsibility for the Children; and the Children were substantially at risk due to parental abuse, neglect, and drug and/or alcohol abuse.[4] *See* Complaint for Custody, 8/31/23, at ¶ 7.

_____

[4] Section 5324 provides, in relevant part:

> **§ 5324. Standing for any form of physical custody or legal custody**.
>
> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> . . .

*(Footnote Continued Next Page)*

Contemporaneously, Paternal Grandmother filed an emergency motion for custody seeking temporary legal and physical custody of the Children. Paternal Grandmother again asserted standing pursuant to section 5324(3). She alleged that, since she returned the Children to Mother's custody in 2019, both she and the Children's parental aunt made numerous report to the local

_____

(3) A grandparent of the child who is not in loco parentis to the child:

    (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

    (ii) who assumes or is willing to assume responsibility for the child; and

    (iii) when one of the following conditions is met:

        (A) the child has been determined to be a dependent child under 42 Pa.C.S.[A.] Ch. 63 (relating to juvenile matters);

        (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

        (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324.

child welfare agency with respect to the Children's safety.[5] She further averred that she exercised custody of the Children from July 31, 2023, to August 14, 2023, upon which she observed that they were dirty, had an unpleasing order that she described as animal urine, and ultimately did not want to return to Mother's home. Paternal Grandmother alleged that the Children "were terrified" to return to mother. Opinion and Order, 2/21/24, at 2. As such, Paternal Grandmother averred that "without immediate court intervention, the . . . Children are in significant danger." *See* Emergency Motion for Custody, 8/31/23, at ¶ 13. She alleged Father's "minimal involvement" and consent to

---

[5] In her emergency motion, Paternal Grandmother listed the following allegations that she had previously filed within the child welfare agency.

> a. Mother's boyfriend . . . is abusive to both Mother and the . . . Children causing the . . . Children to witness domestic violence in the home (including putting a knife to Mother's throat);
>
> b. Mother's boyfriend . . . held a gun to the head of one of the . . . Children;
>
> c. Mother locking the . . . Children in their bedroom for hours at a time;
>
> d. Mother and her boyfriend use drugs and drink excessive amounts of alcohol in the presence of the . . . Children; and
>
> e. [The] Children suffering extreme neglect, including not bathing/showering for extended periods of time.

*See* Emergency Motion for Custody, 8/31/23, at ¶ 8.

her custody. *See id.* at ¶ 14. Paternal Grandmother effectuated service on Mother on September 2, 2023.

Following a hearing on September 5, 2023, at which time neither Mother nor Father appeared, the court awarded Paternal Grandmother temporary legal and physical custody and scheduled a hearing for September 15, 2023.

On September 8, 2023, Mother filed a motion for reconsideration alleging, *inter alia*, that Paternal Grandmother did not provide sufficient notice of the pleadings. Mother asserted that she received Paternal Grandmother's complaint and emergency motion on Saturday, September 2, 2023. However, she alleged that, because Monday, September 4, 2023, was Labor Day, notice was deficient pursuant to local rules, discussed *infra*. *See* Motion for Reconsideration, 9/8/23, at ¶¶ 4, 9. Following a hearing on September 11, 2023, the court denied Mother's reconsideration motion and ultimately scheduled a *de novo* custody trial. Mother filed preliminary objections asserting Paternal Grandmother's lack of standing on October 12, 2023.

The trial court conducted a *de novo* custody trial October 16-17, 2023.[6] Paternal Grandmother and Mother were each present and represented by counsel. Paternal Grandmother presented the testimony of Betty Savage, Fayette County Children and Youth Services intake caseworker; the Children,

---

[6] The notes of testimony for these proceedings are contained in one continuous volume.

then 14 years old, 12 years old, and 8 years old, respectively;[7] Jacqueline Shriver, Mother's stepmother; and Dr. Katherine Blair Bumgardner, who examined the Children and was stipulated an expert in the field of dentistry. Additionally, Paternal Grandmother and Mother both testified on their own behalf.

Ms. Savage testified that she received a report on August 14, 2023 raising allegations related to domestic violence, alcohol use, the Children locking themselves in their rooms, the Children smelling like urine, and housing concerns. **See** N.T. at 10, 14-15. She stated that the two younger children, B.H. and A.H., disclosed that Mother and Mr. Lloyd drink and Mr. Lloyd becomes aggressive and "beats" Mother, resulting in injury. **See id.** at 12, 26. B.H. and A.H. indicated that they locked themselves in their rooms to escape the fighting and were fearful for Mother. **See id.** at 13, 17-19. Ms. Savage further attested that the home, including the Children's bedrooms, smelled like animal urine. **See id.** at 13-14. Notwithstanding, although Ms. Savage expressed that she would have concerns if the Children were returned to Mother, ultimately, the case was closed as the Children were placed with Paternal Grandmother pursuant to the September 5, 2023, emergency order. **See id.** at 9, 24, 26.

_____

[7] The testimony of the Children was taken *in camera*, only in the presence of the court and counsel. **See** N.T. at 34.

Likewise, B.H. and A.H., then twelve and eight years old, revealed regular fighting, violence, drug and alcohol use, and brandishing of weapons by Mother and/or Mr. Lloyd. *See id.* at 38-39, 42, 88-90, 96-98. B.H. and A.H. explained that they would go to their rooms during such altercations between Mother and Mr. Lloyd. *See* N.T. at 40, 52, 89. Notably, B.H. and A.H. acknowledged that Mr. Lloyd would also yell at them. Indeed, B.H. revealed that he threatened her life, as well as that of family members. *See id.* at 39-41, 90; *see also* Plaintiff's Exhibit 1.

Additionally, B.H. and A.H. testified that the house would smell of animal urine and marijuana. *See* N.T. at 42, 93, 98. They described problems with the shower, washer, and refrigerator. These issues impacted their ability to shower and their access to clean clothes and food. *See id.* at 41-42, 44, 92-93. Indeed, B.H. and A.H. each acknowledged being teased at school because their clothes would smell of animal urine. *See id.* at 44-45, 93. Furthermore, B.H. stated that she had not been to a dentist in three to four years. *See id.* at 43. Notably, Dr. Bumgardner testified that A.H., M.H., and B.H. have dental decay. *See id.* at 167-168, 170-173. As a result, B.H. and A.H. testified unequivocally that they did not want to return to Mother's home. *See id.* at 46, 101.

M.H., then 14 years old, testified that Mother and Mr. Lloyd "argue," but she denied that their actions were characterized as domestic violence. She also denied that Mother and Mr. Lloyd drink excessively or have brandished

weapons. **See id.** at 62-63, 72, 77. M.H. further disagreed that she does not have access to food, clean clothes, or the ability to shower in Mother's home. **See id.** at 71, 78. Unlike her younger siblings, M.H. expressed her desire to return to Mother's home. **See id.** at 68-69, 73, 86.

Paternal Grandmother stated that, at the conclusion of the Children's visit to Indiana in August of 2023, B.H., who had wanted to come live with her for three years, stressed that she did not want to go home as Mother and Mr. Lloyd fight all the time and she is afraid for Mother. **See id.** at 142. Paternal Grandmother further discovered that the Children locked themselves in their rooms and that B.H. was being teased in school because she smelled. **See id.** at 140-141, 145, 182-183. Therefore, Paternal Grandmother testified that she and the Children's paternal aunt contacted child services. **See id.** at 176-177. She subsequently learned of an incident with Mr. Loyd and M.H., wherein Mr. Lloyd had M.H. point a gun at him and told her to pull the trigger, which M.H. later confirmed. **See id.** at 140, 178, 181. She also encountered issues communicating with B.H. inasmuch as Mr. Lloyd allegedly cut off the Wi-Fi connection and smashed B.H.'s phone. **See id.** at 147, 176; **see also** Plaintiff's Exhibit 3.

Mother acknowledged that she and Mr. Lloyd argued but denied that such arguments ever became physical. She testified that, during these arguments, the Children go to their rooms, but they are not harmed and are not in fear. **See** N.T. at 219, 229. She further denied any excessive drinking.

*See id.* at 200-201, 209, 227-228. Mother testified that her home is an old farmhouse and does have a "musty farmhouse" smell. *See id.* at 197. While there were issues with the plumbing, refrigerator, and dryer, Mother further denied that the Children were unable to shower, had dirty clothes, or were without food. *See id.* at 200, 208, 226-227.

On the record, subsequent to the testimony of Ms. Savage and B.H., the court denied Mother's preliminary objections and concluded that Paternal Grandmother had standing pursuant to 23 Pa.C.S.A. § 5324(3)(iii)(B). *See* N.T. at 57. By order dated October 16, 2023, and entered October 18, 2023, the court memorialized this determination.

Then, pursuant to order dated and entered February 21, 2024, the court awarded Paternal Grandmother sole legal and sole physical custody of the Children. The court further awarded Mother and Father partial physical custody at the discretion of Paternal Grandmother. The court included the caveat that such visitation shall not occur in the presence of Mr. Lloyd, who shall have no contact with the Children. By separate order, also dated and entered February 21, 2024, the court overruled Mother's preliminary objections. With respect to its custodial award, the court reasoned as follows.

> The best interests of th[e C]hildren and their safety needs are clearly met with [Paternal] Grandmother. Mother has made a choice in life to live with, by all accounts, a dangerous, violent, drunken man who fights and abuses her on a constant basis. The [C]hildren did not make that choice and should not be subject to what they have endured for years. No child can thrive with dental neglect, filth, deplorable housing, violence, gun displays, stench, ridicule in school, and drunken rages. These issues have remained

- 10 -

for years. It is time the [C]hildren's needs came first. They deserve no less.

Opinion and Order, 2/21/24, at 9-10.

On March 21, 2024, Mother, through counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, the trial court filed a Statement in Lieu of Opinion Pursuant to Pa.R.A.P. 1925 on April 11, 2024.

On appeal, Mother raises the following issues for our review:

[1.] Did the trial court abuse its discretion in entering an Emergency Order for Custody before holding an evidentiary hearing to determine standing in a case brought by a third-party grandparent between a natural parent?

[2.] Did the trial court abuse its discretion in denying a Motion for Reconsideration of an Order presented to the [c]ourt that violated the due process rights of [Mother]?

[3.] Did the trial court err in failing to address all of the relocation factors on the record, in open court, or in a subsequent written opinion prior to [Mother]'s Notice of Appeal?

Mother's Brief at 4 (suggested answers omitted).[8]

We review custody orders for an abuse of discretion. *See R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019). We will not find such an abuse merely because we would have reached a different conclusion. *See id.* Rather, an

_____

[8] We observe that Mother sets forth a fourth issue in her statement of questions involved, but it is identical to the third. As such, we deem her fourth issue a clerical error. To the extent that Mother intended to raise an issue with respect to whether the trial court failed to address all of the custody factors, we address it in conjunction with her challenge to the relocation factors inasmuch as the issue was preserved in her Rule 1925(b) statement.

abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. *See id.*

Moreover, our scope of review is broad. *See id.* Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. *See S.C.B. v. J.S.B.*, 218 A.3d 905, 913 (Pa. Super. 2019). Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. *See id.* We are not, however, bound by the trial court's deductions or inferences. *See id.* "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *E.D. v. M.P.* 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa. Super. 2010)). As we stated in *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

Mother raises an inartful jumble of procedural arguments in her first and second issues, which we address together. At their core, Mother essentially raises procedural irregularities with respect to the emergency motion, hearing, and order. Specifically, in her first issue, Mother questions the propriety of the entry of the emergency order before an evidentiary hearing on the issue of standing. *See* Mother's Brief at 9-14. In her second issue, Mother raises further procedural claims surrounding the emergency motion and hearing. As best we can discern, she argues that she was entitled to one additional day of formal notice pursuant to Fayette County Rule of Civil Procedure 208.3(a) ("Local Rule 208.3"). *See id.* at 14-16. Mother's claims are unavailing.

Significantly, to the extent Mother supports her claims with citation to relevant law, it is not pertinent to her first and second issues and, in large part, relates to our standard and scope of review.[9] *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by

_____

[9] We likewise note with disapproval Mother's failure to cite to the record in her argument. *See* Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears.") (citations omitted).

such discussion and citation of authorities as are deemed pertinent."). To the extent that Mother purports to challenge the propriety of the trial court's consideration and approval of Paternal Grandmother's emergency custody motion, we discern no abuse of discretion or error.[10]

Pursuant to the Child Custody Act, a trial court is authorized to "issue an interim award of custody to a party who has standing under section 5324 . . . ." 23 Pa.C.S.A. § 5323(b). Relying on Pennsylvania Rule of Civil Procedure 1915.13, this Court has specifically recognized the entry of interim custody orders without a hearing in emergency situations, particularly where there is no custody order in place. **See** Pa.R.C.P. 1915.13 ("At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody[.]"); **see also M.J.S. v. B.B.**, 172 A.3d 651, 655 (Pa. Super. 2017) ("Rule 1915.13 does not establish any specific procedure for the trial court to impose temporary special relief and, critically, it certainly does not require that the trial court schedule a hearing or listen to argument before special relief is awarded. Indeed, pursuant to Rule 1915.13, the court may grant relief *sua sponte*.") (citation omitted); **see also E.B. v. D.B.**, 209 A.3d 451, 465-466 (Pa. Super. 2019)

---

[10] As the emergency or interim order is no longer in effect, Mother's first and second issues are therefore moot. Nonetheless, as they are apt to evade review, we review them herein. **See E.B. v. D.B.**, 209 A.3d 451, 461 (Pa. Super. 2019).

("In some circumstances entering an order without notice on a temporary basis may be necessary to address a child's best interest.").

Specifically, in ***M.J.S.***, the father filed an appeal from the final custody order, wherein he argued, like Mother in this case, that the court erred by issuing an interim order based upon an emergency petition awarding the child's grandmother custody without a hearing. ***See M.J.S.***, 172 A.2d at 653. This Court rejected the father's argument, stating, "[T]he record confirms that Grandmother filed the emergency petition with the trial court and upon review of the allegations in the petition, the trial court granted interim relief as sanctioned by Rule 1915.13." ***Id.*** at 654-655.

In the case *sub judice*, the record confirms that Paternal Grandmother filed an emergency petition with the trial court. While Mother contends that she was not afforded the appropriate notice pursuant to Local Rule 208.3(a), this Rule requires, "at least two (2) business days before presentation in Motions Court, **unless there are emergency circumstances specified in the motion requiring presentation within a shorter time**." Fayette County R.C.P. 208.3(a) (emphasis added). Instantly, Paternal Grandmother's custody motion was explicitly styled as a request for emergency relief, which the trial court duly accepted and granted. Critically, Mother's argument does not discuss this aspect of Local Rule 208.3 with any particularity.

Therefore, despite adequate notice, Mother failed to appear at a hearing several days later and the court issued an interim order. Contrary to Mother's

assertion, there was no requirement that the trial court hold a hearing prior to the entry of this order and, given the nature of the allegations, we discern no error. While we are sympathetic that a final order granting Mother custodial time was not entered until six months later, the court held a hearing on her motion for reconsideration, at which she was represented by counsel, just one week after the entry of the interim order. Further, the court then conducted a two-day *de novo* custody trial, at which Mother was present and represented by counsel, the following month and entered the subject order. Thus, Mother is not entitled to relief.[11]

Lastly, we review whether the trial court failed to timely address the custody and relocation factors prior to the filing of the notice of appeal. **See** Mother's Brief at 17-21. Such claims are without merit. Our caselaw establishes the following:

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied,* –––

---

[11] To the extent Mother's first issue may be construed as a challenge to the court's underlying determination of standing, upon review of the certified record, we discern no abuse of discretion with the trial court's conclusion that Paternal Grandmother had standing pursuant to section 5324(3)(iii)(B), and we do not disturb it. **See** 23 Pa.C.S.A. § 5324(3); **see also G.A.P. v. J.M.W.**, 194 A.3d 614, 615 (Pa. Super. 2018) ("[T]he Custody Act grants standing to grandparents to file for any form of physical or legal custody when their grandchild is substantially at risk due to the parental behaviors stated in 23 Pa.C.S.[A.] § 5324(3)(iii)(B).").

- 16 -

Pa. –––––, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.,*** 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied,* –––– Pa. –––––, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S***.***T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014). Here, in its opinion accompanying its February 21, 2024, order, the trial court addressed the custody factors,[12] as well as the relevant relocation factors,[13] in setting forth

_____

[12] While the trial court does not address section 5328(a)(11), the proximity of the residences of the parties, section 5328(a)(14), the history of drug or alcohol abuse of a party or member of a party's household, and section 5328(a)(15), the mental and physical condition of a party or member of a party's household, we do not find this fatal to the court's review. Upon review of the testimonial evidence, the court was fully aware that Paternal Grandmother resided in Indiana, and Mother resided in Pennsylvania. ***See*** N.T. at 140, 196. Regardless of physical distance, it is clear from the entirety of the record that the Children's best interests are served by the custodial award to Paternal Grandmother. Further, the testimony of the two younger children, B.H. and A.H., supports the court's finding Mother and Mr. Lloyd abused substances. ***See*** N.T. at 39, 42, 46, 89, 96-98. Finally, the record does not reveal any evidence relevant to the mental or physical condition of a party or member of their household.

[13] To the extent Mother makes a claim regarding the failure to address the section 5337(h) relocation factors, the instant matter does not require separate, distinct consideration of the relocation factors. ***See D.K. v. S.P.K.***, 102 A.3d 467, 477-478 (Pa. Super. 2014) (stating, "[A] custody case where neither parent is seeking to relocate and only the children would be moving to a significantly distant location if custody shifted from one parent to another does not *per se* trigger section 5337 of the Child Custody Act."). Rather, any
*(Footnote Continued Next Page)*

its custody order awarding Paternal Grandmother sole legal and sole physical custody. *See* Opinion and Order, 2/21/24, at 10-12.

The court analyzed and addressed each of the custody factors pursuant to section 5328(a) and the relevant relocation factors pursuant to section 5337. After careful review of the record, and in deference to the trial court's determinations as to credibility and weight of the evidence, we conclude that the trial court's findings and determinations regarding such factors are supported by competent evidence in the record. We, therefore, will not disturb them. For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/15/2024

---

relevant relocation factor not already incorporated by the court's consideration of the custody factors may be addressed under section 5328(a)(16). *Id.*